UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Index No.
MICHAEL GORMAN,

                          Plaintiff,                                **COMPLAINT**

     -against-

ASR GROUP INC., LORENZO VERDEJO, individually,      Plaintiff Demands A
and REBECCA KIETUR, individually,                           Trial by Jury

                         Defendants.
------------------------------------------------------------------------X

Plaintiff, by and through his attorneys, Phillips & Associates, PLLC, hereby complains of the Defendants, upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq*. ("ADA"), the Family and Medical Leave Act ("FMLA"), and the New York State Executive Law, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by his employer on the basis of his actual and/or perceived disability, together with FMLA retaliation, failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §12101 *et seq*., 29 U.S.C. §2617, 28 U.S.C. §1331, 28 U.S.C. §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about September 30, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about October 6, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of receipt of said Notice of Right to Sue Letter.

## PARTIES

8. Plaintiff is a disabled male resident of the State of New York, County of Westchester. He suffers from Post-Traumatic Stress Disorder ("PTSD"), borderline personality disorder, and depression.

9. At all times material, Defendant ASR GROUP INC. (hereinafter "ASR") was and is a foreign business corporation duly incorporated under the laws of the State of Florida.

10. At all times material, Defendant ASR was and is authorized to conduct business in the State of New York, and does conduct business in the State of New York.

11. At all times material, Defendant ASR was and is a cane sugar refining company headquartered at 1 N. Clematis Street, Suite 200, West Palm Beach, Florida.

12. At all times material, Defendant LORENZO VERDEJO (hereinafter "VERDEJO") was and is a resident of the State of New York.

13. At all times material, Defendant VERDEJO was and is Defendant ASR's "Director of Raw Sugar Trading."

14. At all times material, Defendant VERDEJO was and is Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

15. At all times material, Defendant REBECCA KIETUR (hereinafter "KIETUR") was and is a resident of the State of New York.

16. At all times material, Defendant KIETUR was and is Defendant ASR's "Commodity Logistics Manager."

17. At all times material, Defendant KIETUR was and is Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

18. At all times material, Defendant ASR was and is a qualified employer under the FMLA, in that they have at least 50 employees within 75 miles of Plaintiff's work location.

19. At all times material, Plaintiff was a qualified employee under the FMLA in that he worked at least 1,250 hours for Defendant ASR in the 12-month period, immediately preceding his leave.

20. Defendant ASR, Defendant VERDEJO, and Defendant KIETUR are hereinafter also referred to as "Defendants."

21. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

22. On or about February 25, 2019, Plaintiff began working for Defendants as a "Commodity Logistics Analyst," with an annual salary of $78,000 plus a five percent bonus at their Yonkers office, which was located at 1 Federal St, Yonkers, NY 10705.

23. Plaintiff's job responsibilities included oversight of all raw sugar logistic operations, statistical analyses of raw and refined sugar inventories, and monitoring and maintaining schedules related to freight shipments of raw sugar.

24. Throughout his employment, Plaintiff had no performance-related issues. In fact, by the end of 2020, Plaintiff's strong performance led to his pay being increased to $81,000.

25. Moreover, Plaintiff had exemplary performance reviews and was on track to be promoted to "Senior Commodity Logistics Analyst," with a salary increase of $10,000.

26. However, on or about April 26, 2021, while Plaintiff was working remotely from home, he learned that his sister tried to commit suicide. Consequently, Plaintiff began experiencing a panic attack, with accompanying symptoms such as a rapid heartbeat, shortness of breath, chest pain, dizziness, frantic racing thoughts, headaches, and pruritus.

27. That day, Plaintiff told Defendant KIETUR that there was a family emergency causing him to experience a panic attack and requested to work a half day to cope. Plaintiff's request was granted.

28. Later that day, shortly upon arriving at his residence, Plaintiff began experiencing suicidal ideation.

29. The next day, Plaintiff informed his therapist, Danielle O'Malley, of these thoughts. Ms. O'Malley spent significant time on the phone with Plaintiff to help him stabilize.

30. Nevertheless, that same day, Plaintiff suffered a nervous breakdown. During this time, Plaintiff text messaged Defendant KIETUR that he wished to resign from his position because he felt "unworthy." In response, Defendant KIETUR directed Plaintiff to formally resign in an email.

31. Thus, within minutes, Plaintiff emailed Defendant KIETUR and Defendant VERDEJO his resignation.

32. However, approximately thirty minutes later, Defendant VERDEJO called Plaintiff to discuss the reasoning behind his sudden resignation. Plaintiff then told Defendant VERDEJO that his sister attempted to commit suicide, that he had a nervous breakdown, and was trying to help watch his sister's children in the midst of his own struggles. When Plaintiff informed

Defendant VERDEJO that he did not necessarily want to quit his job, but felt inadequate due to his current mental health struggles, Defendant VERDEJO insisted that Plaintiff try to "stay on" and advised him to take the rest of the day off from work. Plaintiff agreed and verbally rescinded his resignation.

33. Later that day, Defendant KIETUR text messaged Plaintiff that Defendant VERDEJO "filled her in" and told Plaintiff to "let her know if they could do anything."

34. Around the same time, Plaintiff also emailed Ms. O'Malley that he was again experiencing suicidal ideation.

35. The next day, Ms. O'Malley tried to call Plaintiff numerous times for a check-in but was unsuccessful in her attempts. Ms. O'Malley, concerned for Plaintiff's safety knowing his previous suicidal ideation, called 9-1-1.

36. Meanwhile, on or about April 28, 2021, in the morning, Plaintiff text messaged Defendant KIETUR, "Hi, I'm not coming in today…. I may need to take a leave of absence…. I will touch base with you later." Defendant KIETUR responded, "Ok, please keep us posted."

37. Plaintiff's text message constituted a request for a reasonable accommodation and/or a request to take FMLA leave.

38. Shortly thereafter, the police arrived at Plaintiff's residence in response to Ms. O'Malley's report and found him sitting on his kitchen floor crying.

39. Plaintiff was eventually transferred to St. Joseph's Hospital. As per hospital guidelines, Plaintiff's cellphone was then confiscated by hospital staff while he received psychotherapy treatment.

40. However, because Plaintiff was extremely concerned about his job, he convinced the nurse to let him text Defendant KIETUR. Thus, that evening, Plaintiff again text messaged Defendant

KIETUR, "I was admitted to the hospital. I won't be able to work the rest of the week, I'll provide whatever documentation is needed…. I'm so sorry."

41. On or about April 29, 2021, Defendant KIETUR responded, "Please take care of yourself and feel better."

42. That same day, Plaintiff's girlfriend, Malak Mojaddidi, emailed Defendant VERDEJO:

> "I am [Plaintiff's] girlfriend, and I am emailing you on his behalf. [Plaintiff] was admitted into a hospital as of yesterday and it is unclear when he will be discharged. The hospital ward that he is currently in prohibits cell phone usage, so he has been unable to reach out to you. Therefore, he asked me to email you on his behalf since he has been unreachable. As of yet, I do not have any information as to when he will be discharged."

43. Defendant VERDEJO immediately replied, "Hi Malak - Thank you for the update. Hope [Plaintiff] feels better soon. Please keep us posted."

44. On or about May 3, 2021, Defendant VERDEJO emailed Ms. Mojaddidi, "Good morning Malak - How is [Plaintiff]? Any update? We have been praying for him. Hope he feels better soon." Ms. Mojaddidi replied, "We appreciate the prayers and well wishes. I will pass them on to [Plaintiff]. [Plaintiff] is still in the hospital and it's not clear yet when he'll be discharged unfortunately."

45. Later that day, on or about May 3, 2021, Plaintiff was discharged from the hospital and cleared to return to work on May 4, 2021.

46. Having recovered his cell phone, Plaintiff saw a previous text message from one of Defendants' vendors stating, "I heard you don't work at [Defendant ASR] anymore." Plaintiff then attempted to log in to his work email and saw that he was locked out of his email. In fact, Plaintiff received no additional emails after April 29, 2021. Given the nature of his work, Plaintiff reasonably believed that Defendants cut his email access off **the day after he was hospitalized**.

47. Moreover, Human Resources Department ("HR") representative, Falan Kelly, emailed Plaintiff's personal email address on May 3, 2021, informing Plaintiff that his sick time will be used **until his last day of work** on May 7, 2021 and that his benefits would also terminate on that date.

48. That evening, Plaintiff text messaged Defendant VERDEJO, "Hi, [Defendant VERDEJO]. I have been discharged from the hospital. Can you please tell me what is going on with my job?" Defendant VERDEJO did not respond.

49. Plaintiff then emailed HR representatives, Holly Peters and Mr. Kelly, Defendant KIETUR, and Defendant VERDEJO, elaborating that his previous absence was due to a medical emergency, referencing his conversation with Defendant VERDEJO where Plaintiff rescinded his initial resignation, and asking whether he still was employed. Plaintiff did not receive any response.

50. On or about May 5, 2021, Plaintiff again text messaged Defendant VERDEJO, "Hi [Defendant VERDEJO] … I would really appreciate if you or anyone would please speak with me… Thanks." Later that evening, Defendant VERDEJO replied, "**Hi [Plaintiff] – We will be reaching out to you by tomorrow**."

51. On or about May 7, 2021, Ms. Peters called Plaintiff. When Plaintiff attempted to discuss his return to work, she repeatedly insisted that he resigned. However, this was false and a pretext to not allow Plaintiff to return to work.

52. In reality, given Plaintiff's known mental health struggles and recent hospitalization, Defendants perceived him as too disabled to complete his job duties and/or that he would require future reasonable accommodations or FMLA leave.

53. Accordingly, though Plaintiff reiterated to Ms. Peters that he had rescinded his resignation and had text messages with Defendant VERDEJO to prove it, she repeatedly insisted, "**We are not having this conversation about anything other than the termination of your benefits and the return of your equipment**."

54. On or about May 7, 2021, **nine days after he was hospitalized**, Plaintiff was terminated.

55. Defendants discriminated against Plaintiff because of his actual and/or perceived disability.

56. Defendants terminated Plaintiff because of his requests for reasonable accommodations and/or FMLA-protected leave.

57. Defendants would not have retaliated against Plaintiff but for his need for a reasonable accommodation and/or FMLA leave.

58. Defendants failed to reasonably accommodate Plaintiff.

59. Defendants failed to engage in the interactive process and/or cooperative dialogue.

60. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

61. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered and continues to suffer severe emotional distress and physical ailments.

62. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

63. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

64. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### UNDER THE ADA
### <u>DISCRIMINATION</u>
### (Not Against Individual Defendants)

65. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. Plaintiff claims that Defendant ASR violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

> (a) General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

67. Defendant ASR violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### UNDER THE ADA
### <u>RETALIATION & INTERFERENCE</u>
### (Not Against Individual Defendants)

68. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

69. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

> (a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

Defendant ASR violated Plaintiff's above rights as set forth herein.

### AS A THIRD CAUSE OF ACTION
### UNDER THE FAMILY AND MEDICAL LEAVE ACT
### RETALIATION & INTERFERENCE

70. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. §2615 of the Act states as follows:

    (a) Interference with rights

    (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

72. Defendants interfered with Plaintiff's rights under the above sections, discriminated against Plaintiff and retaliated against Plaintiff for inquiring about, and taking, FMLA qualified leave.

### AS A FOURTH CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

73. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's. . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

75. Defendants engaged in unlawful discriminatory practices by discriminating against the Plaintiff because of his actual and/or perceived disability, together with failure to accommodate, and failure to engage in the interactive process and/or cooperative dialogue.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FIFTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

77. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

79. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of his opposition to Defendants' unlawful actions and his requests for a reasonable accommodation.

**AS A SIXTH CAUSE OF ACTION**
**UNDER STATE LAW**
**AIDING AND ABETTING**

80. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

82. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SEVENTH CAUSE OF ACTION
### UNDER STATE LAW
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

83. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. New York State Executive Law §296(3)(a) provides:

    "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

85. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff by failing to provide a reasonable accommodation, and by failing to engage in the interactive process and/or cooperative dialogue.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in an unlawful employment practice prohibited by the ADA, FMLA, New York Executive Law, the Administrative Code of the City of New York, on the basis of Plaintiff's actual and/or perceived disability, together with FMLA retaliation and interference, failure to provide a reasonable accommodation, failure to engage in the interactive process and/or cooperative dialogue, retaliation, and wrongful termination.

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff liquidated damages under the FMLA;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: January 3, 2023
      New York, New York

                                        **PHILLIPS & ASSOCIATES, PLLC**
                                        *Attorneys for Plaintiff*

By:   */s/ Max C. Bracero, Esq.*
           Max C. Bracero, Esq.
           45 Broadway, Suite 430
           New York, NY 10006
           (212) 248-7431